IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

MAR 18 2010

MARCIA MILLER KATZ,                    )
                                       )
        Plaintiff,                     )
                                       )
    v.                                 )  1:09cv1059(LMB/TRJ)
                                       )
CAPITAL ONE, et al,                    )
                                       )
        Defendants.                    )

## MEMORANDUM OPINION

Plaintiff Marcia Miller Katz has sued Allied Interstate,
Inc. ("Allied") for breach of contract, harassment and invasion
of privacy, and false reporting of information to a credit
reporting agency in connection with Allied's attempts to collect
a debt on behalf of Capital One Bank. Before the Court are the
parties' cross-motions for summary judgment. Finding that oral
argument will not assist in the decisional process, the motions
will be resolved on the papers submitted by the parties.

Summary judgment is appropriate if there is no genuine issue
as to any material fact and the moving party is entitled to
judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex
Corp. v. Catrett, 477 U.S. 317, 322-23 (1985).  In ruling on a
motion for summary judgment, a court should accept the evidence
of the nonmovant, and all justifiable inferences must be drawn in
his favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255
(1986).

## I. Background

This case arises from the December 2008 theft of the
plaintiff's wallet, which contained a Capital One credit card.
The plaintiff timely notified Capital One about the theft and
Capital One indicated that she would not be responsible for any
charges incurred by the thief. The next billing statement from
Capital One was not itemized, and therefore plaintiff was unable
to determine whether any charges made by the thief had been
improperly billed to her. On January 16, 2009, she wrote to
Capital One asking for an itemization for the relevant billing
period. Capital One failed to respond to that request, but
charged plaintiff a "late fee" in the following billing cycle. On
February 17, 2009, plaintiff sent Capital One a $5.00 check
indicating on the "for" line that it was in accord and
satisfaction of her entire debt. Capital One never responded to
that notation, but cashed the check. Plaintiff contends that the
debt was satisfied when Capital One cashed her check and she has
refused to pay anything further. As a result, Capital One
continued thereafter to bill plaintiff for additional late
charges and ultimately hired defendant Allied to collect
plaintiff's debt.

On April 27, 2009, Allied sent a letter to plaintiff
indicating that it was attempting to collect this debt and
stating that if plaintiff notified Allied within 30 days that she

2

disputed the validity of the debt, then Allied would verify the debt before proceeding with collection. In response, plaintiff called Allied to obtain a fax number to which she could send a letter disputing the validity of the Capital One debt and Allied provided a fax number. Plaintiff's counsel wrote a letter on May 5, 2009, which was faxed to the number Allied had provided, stating that the debt was disputed, that plaintiff had written several letters to Capital One in attempt to settle the issue, and that Allied was not to contact her. The letter also stated that "[h]enceforth, the initial telephone call to Ms. Katz will be charged $50. [sic] for the first call and, thereafter each subsequent telephone call to her will double the cost: i.e. [sic] $100. [sic] for the 2nd. [sic] call; $200. [sic] for the 3rd call and continuing."

The fax number Allied provided to plaintiff was operated by Capital One Services, Inc. pursuant to an agreement with Allied to "receive, respond to, forward, and escalate Customer inquiries, complaints, comments, and requests related to the Accounts." Allied asserts that it never received the fax, which is corroborated by Capital One Director of Process Management's sworn statement that Capital One received the fax, Allied had no access to it, and the letter was never transmitted or communicated to Allied. McDevitt Decl. at ¶¶ 3-5. Plaintiff argues that she had no indication that the fax number did not

3

belong to Allied and states that, had she known, she would have used a different delivery method. Plaintiff alleges that Allied telephoned her fifteen to seventeen times after her attorney faxed the May 5, 2009 letter.

Katz originally filed her complaint in the Circuit Court for Arlington County on August 18, 2009.[1] On September 18, 2009, Allied removed it to this Court on the grounds that it asserts a federal cause of action under the Federal Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692 et seq., without directly citing to the statute. Although plaintiff filed a Motion to Remand, arguing that she made no claim under the FDCPA, the Court found her position a disingenuous attempt to avoid federal court and ruled that this Court has jurisdiction pursuant to the artful pleading doctrine.

## II. Discussion

### A. Count I: Breach of Contract

Plaintiff's first cause of action is for breach of a contract which she claims was formed by her attorney's letter of May 5, 2009. Plaintiff argues that the letter was an offer to charge Allied a fee each time it called her and that Allied accepted that offer by calling plaintiff. Putting aside the compelling argument that such a letter could not create a contract, the uncontroverted evidence is that the fax number to which the letter was sent was

---

[1] Capital One was originally a defendant to this action, but was dismissed because the credit card agreement with plaintiff contained a binding arbitration clause.

4

not an Allied number, but a Capital One number, and that Allied never received the fax.[2] As such, defendant could not have accepted the "offer" because that offer was never received by Allied. Plaintiff has no evidence to refute that fact, but instead invokes equitable estoppel, arguing that because plaintiff reasonably relied on the fax number Allied supplied, Allied should be estopped from claiming it never received the letter. Plaintiff confusedly cites to several cases that are inapposite here because they consider estoppel only in the context of a statute of frauds defense and either do not support plaintiff's proposition or are wholly unrelated to contract law. (T v. T, 216 Va. 867 (Va. 1976) (holding that a husband who promised his wife that he would care for her child by another man if she married him and, when she did, did treat the child as his own, was later estopped during child support proceedings from claiming a statute of frauds violation); Nargi v. CaMac Corp., 820 F.Supp. 253 (W.D.Va. 1992)(estopping defendant from asserting a statute of frauds defense where plaintiff had made substantial life changes based on an oral employment agreement); Albanese v. WCI Communications, Inc., 530 F.Supp.2d 752 (E.D.Va 2007)(holding that employer was not equitably estopped from a statute of frauds defense because employee failed

---

[2] It should be noted that plaintiff disputes this fact, but offers no basis for her position. Plaintiff cannot create a genuine issue of fact by simply contradicting defendant's evidence with generic, unsupported assertions.

5

demonstrate fraud). Plaintiff may be attempting to invoke promissory estoppel, but it is unclear that defendant made any representation that it would directly receive the fax or that plaintiff's reliance on the fax number without any follow-up was reasonable. Moreover, there is no evidence that Allied intentionally acted to mislead the plaintiff.

Even if the Court were to, on equitable grounds, assume that Allied received the letter, plaintiff cannot establish an enforceable contract. A contract is a bargained-for exchange involving both an offer and an acceptance. Even if the letter to Allied constituted an offer, there is no evidence whatsoever that Allied accepted the offer. To the contrary, even Plaintiff admits that Allied never explicitly accepted the terms of the letter. See Katz Dep. at 30, ¶¶ 14-16; Katz Dep. at 31, ¶¶ 7-10. Plaintiff asks the Court to infer that Allied accepted the terms of the contract by its subsequent conduct, citing to several cases in which Virginia courts have made such a finding. However, the facts of those cases provide substantial indicia of the offeree's intent to accept the offer and form a contract.[3] In this case, no such

_____

[3] For example, plaintiff cites to Chang v. First Colonial Savings Bank, a case in which the Virginia Supreme Court found exception to the general rule that advertisements are not offers because that particular advertisement was clear, definite, and explicit in its terms and the offerees relied on the offer by depositing $14,000 into a savings account with the bank. 242 Va. 388 (1991). Plaintiff also cites to: Princess Cruises, Inc. v. General Elec. Co, 143 F.3d 828 (4th Cir. 1998)(determining the final terms of a contract where "the parties do not dispute that

6

indicia are present. Allied did not alter its behavior and would have taken the same actions had the letter never been written.[4] The Court therefore declines to find that the letter constitutes a proper offer or to infer an acceptance of that offer, particularly in light of the evidence that Allied never received the letter. Accordingly, summary judgment will be granted in defendant's favor on the breach of contract claim.

### B. Count II: Harassment and Invasion of Privacy

Count II alleges harassment and invasion of privacy. As defendant properly argues, these causes of action are not recognized under Virginia law in this context.[5] See Weist v. E-Fense, Inc., 356 F.Supp.2d 604 (E.D.Va. 2005); Falwell v. Penthouse

---

a contract was formed by their exchange of documents"); Thompson v. Artrip, 131 Va. 347 (Va. 1921)(stating that "acceptance may be inferred from the acts and conduct of the promisee" in holding that a tenant who, after the expiration of a lease term, remains in possession of a property with owner's permission and continues to pay rent becomes a year to year tenant); Bernstein v. Bord, 146 Va. 670 (Va. 1926)(holding that while there was no express consent to an oral offer, the actions of the parties and totality of the circumstances made clear that an agreement existed to release a debt upon the sale of debtor's real property).

[4] In fact, the evidence suggests that had Allied received the letter, it would have ceased contacting plaintiff until it had verified the debt. See Stmt. Undisputed Facts, Ex. A.

[5] The only statutory cause of action in Virginia for invasion of privacy is pursuant to Va. Code § 8.01-40, which relates only to unauthorized use of a likeness. See Brown v. American Broadcasting Co., 704 F.2d 1296, 1302 (4th Cir. 1983); Williams v. Newsweek, Inc., 63 F.Supp. 2d 734 (E.D.Va. 2005). There is a statutory cause of action for harassment, but only if it is based upon race, religion, or ethnicity. See Va. Code § 8.01-42.1. Neither type of allegation is involved in the instant lawsuit.

7

International, Ltd., 521 F.Supp. 1204, 1206 (W.D.Va. 1981).
Plaintiff fails to cite any legal authority supporting these causes
of action. See Compl.; Katz Resp. To Def.'s Interrogs. at ¶11A.
Therefore, summary judgment will be granted to defendant on this
claim.

Although plaintiff has consistently argued that she is not
making a claim under the FDCPA, part of plaintiff's harassment
claim has been construed as brought under the FDCPA because the
claim focuses on alleged abusive debt collection practices and
there is no remedy for such practices under Virginia statutory law.
However, under the FDCPA a debt collector's latitude in
communications with consumers is limited. Plaintiff's claim, read
generously, appears to address the prohibition on any communication
with the consumer "if the debt collector knows the consumer is
represented by an attorney with respect to such debt." 15 U.S.C. §
1692c. Plaintiff's claim may be construed as arising under this
provision on the grounds that counsel's letter of May 5, 2009 put
Allied on notice that the plaintiff was represented by an attorney.
However, as discussed supra, there is no evidence that Allied
received the May 5, 2009 letter, and therefore, there is no
evidence that Allied violated § 1692c.

The FDCPA also prohibits debt collectors from engaging in
harassing conduct, which the statute delineates in relevant part as
"causing a telephone to ring... repeatedly or continuously with

8

intent to annoy, abuse, or harass any person at the called number."
15 U.S.C. § 1692d. The plaintiff characterizes Allied's phone calls
as "willful; [sic] malicious, harassing; [sic] vengeful." Compl. at
¶ 23. However, nothing in the record indicates that the phone calls
were intended to be annoying, abusive, or harassing. Instead, the
record shows that Allied, believing plaintiff's debt to be valid,
attempted to take steps to collect that debt. Moreover, the record
reflects that Allied placed no more than two calls to plaintiff in
a single day.[6] See Def.'s Resp. To Req. For Admis. at ¶¶ 4-20.
Although the case law defining what amounts to "causing a telephone
to ring... repeatedly or continuously" is sparse, most courts
addressing the issue have found that "it turns not only on the
volume of calls made, but also on the pattern of calls." Akalwadi
v. Risk Management Alternatives, Inc., 336 F.Supp.2d 492 (D.Md.
2004); see also Gilroy v. Ameriquest Mortg. Co., 632 F.Supp.2d 132,
136-37 (D.N.H. 2009)(finding a violation of § 1692d where calls
were being placed between 8:00pm and 9:00pm and the consumer had
asked defendants to stop calling); Sanchez v. Client Services,
Inc., 520 F.Supp.2d 1149, 1161 (N.D.Cal. 2007)(holding that the
number and frequency of calls can show there was an intent to annoy
consumer); Chiverton v. Federal Financial Group, Inc., 399

_____

[6] Plaintiff's Statement of Material Facts Not in Dispute
asserts that Allied made four calls to plaintiff on May 1, 2009,
but this information is not corroborated by any sworn testimony
or documentation and therefore cannot be considered evidence.

F.Supp.2d 96 (D.Conn. 2005)(finding that repeated calls after the consumer had asked debt collector to stop calling amounted to harassment); Kuhn v. Account Control Tech., 865 F.Supp. 1443, 1453 (D.Nev. 1994)(finding that defendant who made six calls to consumer in twenty-four minutes violated § 1692d). The evidence shows that none of Allied's calls were made back-to-back, at inconvenient times, after plaintiff had asked Allied to stop calling, or immediately after plaintiff hung up. Allied called plaintiff twice in a single day, within a three-hour time span on one occasion and within a four hour time span on another occasion. Without any indicia of an unacceptable pattern of calls, this does not constitute harassment. See Saltzman v. I.C. System, Inc., 2009 WL 3190359 (E.D. Mich. 2009)(finding that "a debt collector does not necessarily engage in harassment by placing one or two unanswered calls a day in an unsuccessful effort to reach the debtor if this effort is unaccompanied by any oppressive conduct."); Udell v. Kansas Counselors, Inc., 313 F.Supp.2d 1135, 1143 (D.Kan. 2004)(holding that four calls over seven days by a debt collector without leaving a message does not violate § 1692d). Therefore, the Court finds there was no violation of § 1692d and summary judgment will be granted to the defendant on this claim.

## C. Count III: Defamation

Plaintiff's third and final claim is for defamation based on alleged false reporting of information about plaintiff to credit

10

reporting agencies. However, plaintiff admits that she has no evidence to support her claim and it is undisputed that Allied has not reported any adverse information relating to plaintiff to any credit bureaus. In fact, the plaintiff admits not having requested a credit report since the date of the theft. See Stmt. Undisputed Facts at ¶¶ 6-7. As there is no evidence to support Count III, summary judgment will be granted to defendant on this claim.

### III. Conclusion

For the reasons stated above, plaintiff's Motion for Summary Judgment [52] will be DENIED and defendant's Motion for Summary Judgment [42] will be GRANTED, by an order to issue with this opinion.

Entered this _18th_ day of March, 2010.


Alexandria, Virginia

/s/

Leonie M. Brinkema
United States District Judge

11